# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHANTAY M.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 23-1126-JWL |
| MARTIN O'MALLEY,[2] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent herewith.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff protectively filed an application for SSI benefits on October 8, 2021.  (R. 17, 175-77).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in finding the degenerative changes to her lumbar spine not severe within the meaning of the Social Security regulations at step two of the sequential evaluation process, thereby concluding she was not disabled at this step, and failed to continue the analysis to determine properly whether she is disabled in accordance with the regulations.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.   Discussion**

Plaintiff argues the ALJ's assertion that her physical examinations are unremarkable "is belied by a review of the evidence and is unsupported by the ALJ's own summary of the evidence."  (Pl. Br. 8).  She admits that of the citations by the ALJ, her family practitioner's physical examination was unremarkable, but points out that one record cited was a record disclosing there were no records from Wesley Medical Center,

and argues the ALJ's discussion of Dr. Kadam's treatment selectively emphasized normal findings while omitting his identification of abnormalities—"decreased painful lumbar range of motion, paraspinal muscle tenderness, and diffuse tenderness to palpation in the lumbosacral region." (Pl. Br. 8-9) (citing R. 375).  She argues, "the ALJ failed to evaluate or even address [Plaintiff]'s physical therapy records despite their documentation of significant limitations"—neural tension with bilateral slump test, decreased lumbar range of motion, deficits in lower extremity and posterolateral hip strength, and an abnormal gait.  Id. at 9 (citing R. 347-48).

     Plaintiff also argues the ALJ erred in relying on the opinions of the state agency medical consultants who did not review most of the medical records and found Plaintiff had no medically determinable impairments.  Id. 10.  She notes the ALJ found the state agency physicians' opinions "persuasive because they were consistent with the lack of clinical findings" but she argues that was error because Plaintiff's physical exam findings were not unremarkably normal.  Id. 11.

     Finally, Plaintiff argues the ALJ erred in failing to order a consultative examination because, in accordance with Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997), she has presented "evidence sufficient to suggest a reasonable possibility that a severe impairment exists."  Id.  She argues that despite the ALJ's finding the record evidence sufficient to evaluate Plaintiff's claim, "it is unclear on the face of the ALJ's decision how he reached the conclusion that [the degenerative changes in Plaintiff's back in combination with her other impairments] would cause no more than a slight abnormality in her ability to perform basic tasks." Id. 12.

In response the Commissioner argues Plaintiff has a three-part burden at step two, (1) to show she has a medically determinable impairment (MDI), (2) which significantly limits her ability to perform basic work activities, (3) "for a continuous period of 12 months or longer." (Comm'r Br. 4). He argues Plaintiff did not seek treatment for her back pain "until late August 2022, just six weeks before the administrative hearing," a lumbar spine x-ray at that time showed mild-to-moderate degenerative changes, and a "physical examination conducted the same day as the x-ray, was entirely normal and suggested no functional deficits." Id. 6 (citing R. 339-42, 345). He summarized the treatment of Dr. Kadam and the results of an MRI the doctor ordered, both of which occurred after the ALJ's administrative hearing. Id. 7.

He summarized his argument:

> Overall, Plaintiff's limited medical records reflect that, while imaging showed some degenerative changes of the lumbar spine, her physical examinations were largely normal (Tr. 325, 340-41, 361-62). Plaintiff's only physical examinations which showed any functional deficits occurred in September 2022 and October 2022—immediately before and after the administrative hearing on October 7, 2022 (Tr. 17, 347-51, 374-76). Thus, the ALJ reasonably found that Plaintiff failed to meet her burden to prove that her impairments significantly limited her ability to do basic work activity for a continuous period of at least 12 months.

Id.

He recognizes Plaintiff's citation of alleged abnormalities in her physical therapy intake evaluation, in Dr. Kadam's evaluation, and in the MRI results and argues that, nonetheless, Plaintiff did not meet her "burden to prove that her lower back impairment had a significant functional impact on her ability to work—i.e., significantly limited her ability to perform basic work activity for a continuous period of at least 12 months." Id.

6

8. He argues that the records upon which Plaintiff relies were considered by the ALJ "[a]nd while Plaintiff may wish the ALJ would have evaluated this evidence differently, her argument overtly asks the Court [sic] to do what it may not do under the highly-deferential substantial evidence standard of review; reweigh the evidence to come to a conclusion more favorable to Plaintiff." (Comm'r Br. 9) (citing Lax, 489 F.3d, at 1084). He argues, "where the ALJ's decision was supported by substantial evidence and the correct legal standards were used, the Court [sic] must affirm." Id.

Finally, the Commissioner argues the ALJ properly considered the prior administrative medical findings of the state agency medical consultants. Id. 10. He concludes by arguing the ALJ properly did not order a consultative examination of Plaintiff because, as the ALJ found, the record contained sufficient evidence to evaluate the case. Id. 11. He concludes, "In this case, substantial evidence supports the ALJ's determination that Plaintiff's impairments, considered individually and in combination, did not significantly limit her ability to perform basic work activity for 12 consecutive months." Id.

### A.     **Standard for Evaluating Severity at Step Two**

An impairment is not considered severe if it does not significantly limit Plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.922. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, Plaintiff

7

must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, she must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's severity is so slight that it could not interfere with or have a serious impact on Plaintiff's ability to do basic work activities, it could not prevent her from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.  The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience.  Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003).  Plaintiff must provide evidence that she had an impairment and how severe it was during the time she alleges she was disabled.  20 C.F.R. § 416.912.

### B.      The ALJ's Relevant Findings

The ALJ found Plaintiff has MDI's of "degenerative changes to the lumbar spine, Achilles tendinitis, elevated blood pressure, and obesity."  (R. 19) (finding no.2, bold omitted).  He then found that these impairments, neither individually nor in combination, are severe within the meaning of the Act or the regulations.  Id. 20.  He considered Plaintiff's allegations of symptoms, specifically acknowledging her reports "that she can only be on her feet for about 15 minutes at a time, … she can sit for about 20 to 30 minutes, before needing to shift positions, [and] … she is unable to lift her one year old grandchild, who she stated weighs 30 pounds."  Id. 21.  He found Plaintiff's allegations of symptoms "are not entirely consistent for the reasons explained in this decision."  Id.

8

The ALJ discussed the evidence regarding Plaintiff's degenerative disc disease and obesity and evaluated the prior administrative medical finding of the state agency medical consultant, Dr. Hughes:

> While the claimant alleges on [sic] onset date of February 1, 2020, she did not seek treatment for back pain until August of 2022 (Exhibit 4F). An MRI of the claimant's lumbar spine, performed in October of 2022 shows mild degenerative spondylosis, most prominent at L4-5, where a "trace" disc bulge and facet arthropathy result in mild to moderate right-sided neural foraminal stenosis (Exhibit 8F at 2-3). Despite the degenerative changes to her lumbar spine, the claimant's physical examination findings have been unremarkable. The claimant has full range of motion in her lumbar spine (Exhibits 2F at 4; 4F at 10). She has normal gait, coordination, and balance (Exhibits 4F at 10; 7F at 2, 3). The claimant has normal (5/5) strength in both lower extremities, with no muscle atrophy (Exhibit 7F at 2, 3). The claimant exhibits no sensory deficits in her lower extremities (Exhibit 7F at 4). Straight leg raising, a clinical test for lumbar radiculopathy, has been negative (Exhibits 4F at 10; 7F at 3).
>
> \*\*\*
>
> The claimant is clinically obese, with a body mass index (BMI) of 39.6 (Exhibit 7F at 1). BMI is a measure of an individual's obesity. Indexes over 29 are considered to be in the obese range. Per Social Security Ruling 19-2p, due to obesity, "a person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling," in the "non-exertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling," may experience increased "stress on weight-bearing joints," contributing to "limitation of the range of motion of the skeletal spine and extremities," and obesity "may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards." In the present case, however, there is no evidence that the claimant's obesity results in significant functional limitations. On the contrary, as discussed above, the claimant's physical examination findings have been normal.
>
> \*\*\*
>
> In making this finding, the undersigned has found the prior administrative medical findings of Robert Hughes, M.D., to be persuasive (Exhibit 3A).

9

> Dr. Hughes found that the evidence, at the time of his review, did not establish any medically determinable impairments. He noted, however, that <u>diagnostic imaging</u> showing lumbar pathology "would only change this from a no MDI to non-severe by program standards given the lack of clinical findings." Imaging has now been obtained that confirms a lumbar spine impairment (Exhibit 8F at 2-3). As Dr. Hughes noted, however, the claimant's physical examination findings do not support finding the claimant's lumbar degenerative disc disease to be severe. As discussed above, the claimant's gait, strength, and range of motion are normal, and do not support a finding that the claimant experiences significant functional limitations.

(R. 21-22) (emphasis added).

### **C.** **Analysis**

This is a difficult and close question. First, and most glaringly, to the extent the Commissioner argues a claimant must show 12 month's duration of a severe impairment he errs because a claimant need only show an <u>expectation</u> the impairment would last for a continuous period of 12 months. 20 C.F.R. § 416,909. However, the court finds error in the ALJ's determination Plaintiff has no severe impairment or combination of impairments for the following reasons.

The ALJ stated he found Plaintiff's allegations of symptoms inconsistent with the record evidence for the reasons explained in the decision, but the court finds no reasons clearly explained in the decision. Presumably the ALJ's reason for discounting Plaintiff's allegations is that her physical examination findings have been normal, but he provides no explanation why normal examination findings preclude also finding pain—in combination with obesity—limits Plaintiff to walking or standing for fifteen minutes, to sitting for twenty to thirty minutes, and to lifting less than 30 pounds. Thus, he has not justified discounting Plaintiff's allegations of symptoms.

10

While, as the ALJ found, Plaintiff did not seek treatment for back pain until a year-and-a-half after she alleges disability, that fact does not preclude her having developed a severe impairment or combination of impairments during that period of time and the ALJ from finding an onset date of disability later than the date alleged by Plaintiff.  Further, Plaintiff testified she did not have medical insurance until August or September 2022 and the ALJ did not mention that fact or discuss whether or how the lack of insurance might have affected documentation of the severity of her impairments.

Moreover, the ALJ did not accurately describe the state agency medical consultant's opinion when he stated Dr. Hughes noted "that <u>diagnostic imaging</u> showing lumbar pathology 'would only change this from a no MDI to non-severe by program standards given the lack of clinical findings.'"  (R. 22) (emphasis added) (quoting without pinpoint citation R. 68).  What the ALJ was actually quoting was <u>Dr. Lee's</u> summary from the initial consideration level.  <u>Id.</u> 58-59, 68-69.  Although Dr. Hughes apparently adopted Dr. Lee's summary, he was not the originator of the statement cited.  Moreover, the citation referred to does not state that <u>diagnostic imaging</u> showing lumbar pathology would only demonstrate a medically determinable but non-severe impairment as the ALJ stated.  Rather, Dr. Lee noted there was no lumbar spine x-ray in the file when he (or Dr. Hughes for that matter) reviewed the file.  <u>Id.</u> 58, 68.  He then stated, "positive <u>xray</u> findings would only change this from no MDI to non-severe by program standards given the lack of clinical findings."  <u>Id.</u> 58, 68.  Although the ALJ did not mention it in his decision, Plaintiff's nurse-practitioner ordered x-rays when Plaintiff sought to establish care with Montoya Family Practice in August 2022.  <u>Id.</u> 342.  Those x-rays

11

revealed "Minimal grade 1 anterolisthesis of L4 on L5 and L5 on S1 which is new since 2015 without underlying pars interarticularis defects," and "Mild-to-moderate scattered degenerative changes, greatest within the lower lumbar spine." Id. 345. In light of Dr. Lee's statement, it is not error for the ALJ to fail to discuss these x-ray studies. However, the record also includes an MRI report ordered by Dr. Kadam. (R. 382-83). The MRI revealed, "Mild degenerative lumbar spondylosis in the lower lumbar spine, most pronounced at L4-L5 with trace disc bulge and facet arthropathy resulting in mild to moderate right foraminal stenosis. Correlation with patient's symptoms recommended." Id. 383. Although the ALJ attributed Dr. Lee's statement regarding x-rays to all diagnostic imaging such as the MRI here, Dr. Lee did not do so, and the ALJ provided no medical authority for such attribution. Moreover, while x-rays cannot reveal conditions within the vertebral structures of the spine, an MRI may, thereby revealing the disc bulge and foraminal stenosis here. In fact, the "FINDINGS" section of the MRI report here reveals "Mild to moderate right foraminal stenosis with contact of the exiting right L4 nerve" at the L4-L5 vertebrae. Id. (emphasis added).

  While it is unclear to a lay observer such as the ALJ or this court whether on this record the MRI evidence reveals a severe back impairment, Dr. Lee's statement regarding x-ray evidence does not clarify the issue. Finally, since the MRI report is the last medical evidence in the record, id. 381-85, and recommends correlation with Plaintiff's symptoms, the ALJ should have at least sought medical correlation between the MRI report and Plaintiff's symptoms (perhaps from Dr. Kadam for whom the MRI was produced) but that did not occur, leaving the question unanswered.

Plaintiff also argues the ALJ erred in failing to order a consultative examination as Plaintiff requested at the hearing. (Pl. Br. 11-12). The Commissioner argues that, as the ALJ found, the record "was sufficient for the ALJ to evaluate Plaintiff's impairments" and "the ALJ had no obligation to order a consultative examination." (Comm'r Br. 11). However, as noted above, the record evidence is inadequate to demonstrate whether or not Plaintiff has a severe combination of impairments. As Plaintiff suggests, the Tenth Circuit has decided a case which answers the issue here. Hawkins, 113 F.3d at 1166.

In Hawkins, the ALJ had found the claimant's impairments not severe and the claimant argued to the court that the ALJ failed his duty to develop the record when he refused to order mental and physical consultative examinations. Id. at 1164. The court found no error in the failure to order a mental examination and went on to address the physical examination. Id. 1165. The court addressed the applicable record evidence and the law regarding consultative examinations and explained:

> As is usual in the law, the extreme cases are easy to decide; the cases that fit clearly within the framework of the regulations give us little pause. The difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling. How much evidence must a claimant adduce in order to raise an issue requiring further investigation? Our review of the cases and the regulations leads us to conclude that the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation.

Id. 1167. The court noted,

> the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a

13

> consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

Id.  The court noted the claimant's burden at step two is de minimis and found in that case, "Even under that nondemanding standard, however, we cannot say on the basis of this record whether claimant's impairment is severe or not severe without more medical information" and remanded for further proceedings.  Hawkins, 113 F.3d 1169-70.  As noted above, Plaintiff here presented evidence suggesting a reasonable possibility that a severe impairment or combination of impairments exists.  But the evidence in this case is also inconclusive whether Plaintiff has a severe impairment or combination of impairments.  Therefore, remand is necessary for the ALJ to develop the record and determine whether Plaintiff has a severe impairment or combination of impairments.  The court does not mean to suggest hereby that a consultative examination will be required because the medical record may already have been sufficiently developed by Plaintiff's subsequent course of treatment.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent herewith.

Dated February 13, 2024, at Kansas City, Kansas.

        s:/  John W Lungstrum____
        **John W. Lungstrum**
        **United States District Judge**